UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RICKY BELL,
  Plaintiff,

vs.                                               No. 05-1054

MATTHEW FREDRICKSON,
JEFFREY K. MCCUE,
LYLE HAWKINSON,
ROGER E. WALKER, JR.,

  Defendants.

### ORDER

There is one claim remaining in this 42 U.S.C. § 1983 prisoner civil rights case: retaliation for filing grievances.  Before the Court is the defendants' motion for summary judgment (d/e 34).

The court concludes that disputed issues of fact exist on the retaliation claims against Frederickson, McCue, and Hawkinson, but not against Walker.  Walker will therefore be dismissed, and the case set for trial against the remaining defendants.

### Summary Judgment Standard

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*;*Fed. R. Civ. P.56©.  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).   Credibility questions "defeat summary judgment '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).  In determining whether factual issues exist, the court must view all the evidence in the

light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

## Facts

These facts are set forth for purposes of this order only and are set forth in the light most favorable to the plaintiff. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). Many are taken verbatim from the defendants' undisputed facts, to the extent not dispute by the plaintiff. Where a dispute exists, the plaintiff's version is set forth as fact, to the extent his affidavit is based on personal knowledge and he is competent to testify to the matters stated therein. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

1. The plaintiff is an Illinois Department of Corrections inmate currently incarcerated at Illinois River Correctional Center. The events in this case occurred at Hill Correctional Center.

2. At all times relevant, Defendant Matthew Fredrickson was a Correctional Officer at Hill Correctional Center.

3. Defendant Jeffrey K. McCue is a Correctional Lieutenant at Hill Correctional Center.

4. Defendant Lyle Hawkinson is a Grievance Officer at Hill Correctional Center.

5. Defendant Roger E. Walker is the Director of Illinois Department of Corrections.

6. On February 14, 2003, the plaintiff submitted a grievance complaining that Defendant Fredrickson had wrongfully kept the plaintiff from going to the commissary. The grievance recounts that, on February 13, 2003, the plaintiff had been shopping in commissary and had spoken to some inmates in response to their questions. According to the grievance, Defendant Fredrickson revoked the plaintiff's commissary privileges for one week for talking while in commissary, which is against the rules. The grievance complained the Frederickson did not have the authority on his own to impose punishment for the violation of a prison rule. The plaintiff stated in his grievance that, under IDOC rules, Frederickson could have either orally reprimanded the plaintiff or written up a disciplinary report, but not revoked commissary privileges unilaterally. *Attachment to Complaint, d/e 13, p. 15 of scanned attachment #1*. Defendant Hawkinson denied the grievance, for the stated reason that the prison's policies and procedures had been followed.

8. The plaintiff avers that, on March 5, 2003, defendant Fredrickson approached the plaintiff's cell, while in the process of collecting commissary slips. According to the plaintiff Frederickson loudly questioned the plaintiff about his February grievance in front of other inmates on the wing, and also stated loudly that, "because of the plaintiff's grievance

[Fredrickson] would have to write disciplinary reports on all inmates." *Plaintiff's Aff. ¶ 4.*

9. On March 5, 2003, Frederickson escorted the plaintiff and other inmates on the wing to commissary. Frederickson gave his traditional speech about the rule against talking in the commissary. After the speech, Defendant Frederickson looked at the plaintiff and asked if the plaintiff wanted a disciplinary report. The plaintiff replied no. *Plaintiff's Aff. ¶ 7.*

10. On March 5, 2003, the plaintiff crossed the yellow line in commissary, believing his name had been called. His last name in fact had been called, but there were two inmates with the same last name ("Bell"). Frederickson approached the plaintiff, telling him that technically a disciplinary report could be written. Then Frederickson "began to talk about the plaintiff's grievance agin [sic] and once again speaking very loudly, so nas [sic] to alert all of the inmates inside of the commissary, at the time that he was going to have to start writing disciplinary reports on every inmate because of the plaintiff's grievances." *Plaintiff's Aff. ¶ 10.*

11. On March 5, 2003, Defendant Fredrickson issued Plaintiff a disciplinary report accusing Plaintiff of crossing the yellow line in commissary before being called. The charges were for disobeying a direct order and unauthorized movement. *Complaint at ¶¶ 21-22; Disciplinary Report dated March 5, 2003, attached to the Complaint in Appendix; Affidavit of Matthew Fredrickson, attached hereto as Exhibit A.* Specifically, the report stated:

> On the above date and time Bell N20653 while waiting to be called to a window to shop was unauthorized to cross the yellow line till called, as posted. As per Bell's request a ticket is to be wrote.

12. On March 11, 2003, the plaintiff was found not guilty on Fredrickson's March 5, 2003 disciplinary report and the report was expunged. The reason stated was verification of the plaintiff's assertion that two inmate "Bells" were shopping at the same time. The supply supervisor had called "Bell" to the window, without announcing the identification number. *Program Unit Summary Report dated March 11, 2003, attached to the Complaint in Appendix at p.20; Transcript of the Deposition of Ricky Bell ("Plaintiff's Dep.") at pp.16-17.*

13. On March 17, 2003, Plaintiff submitted a grievance accusing Defendant Fredrickson of retaliating against him for his February grievance, recounting all the above events. *Complaint at ¶ 31; Committed Person's Grievance dated March 17, 2003, attached to the Complaint in Appendix at pp.14-15.*

14. After the plaintiff filed the March 17th grievance, Fredrickson approached the plaintiff and "expressed to the plaintiff that his grievance could do nothing because, Quote; 'We're all family here.'" *Plaintiff's Aff. ¶ 22.* Fredrickson also began taking the plaintiff's wing last to the commissary. *Plaintiff's Aff. ¶ 24.* The plaintiff believes Fredrickson did this to

3

stir up anger against the plaintiff from other inmates.

      15. Defendant Hawkinson, the grievance officer, recommended denial of the plaintiff's March 17th grievance, for the stated reason that the staff had reasonably followed the prison's policies and procedures. *Attachment to Complaint, 3/21/03 response*. The plaintiff asserts that Hawkinson conducted no investigation on the grievance other than interviewing Frederickson.

      16. Plaintiff does not know what Defendant Hawkinson's motivation was for not interviewing Plaintiff or other inmates regarding the allegations in the March 17, 2003 grievance. *Plaintiff's Dep. at p.25*.

      17. Nancy Tucker was authorized by Director Walker to review and sign appealed grievances on his behalf. *Affidavit of Terri Anderson, attached hereto as Exhibit C*. She signed Walker's name denying the plaintiff's March 17th grievance on December 19, 2003. *Affidavit of Terri Anderson; Letter to Plaintiff from Terri Anderson for the ARB dated December 19, 2003, attached to Complaint in Appendix at p.11*.

      18. On April 10, 2003, the plaintiff was inside his cell with two other inmates. Defendant McCue, the supervising lieutenant, opened the plaintiff's cell door and asked, "Which one of you don't belong in this cell." *Plaintiff's Aff. ¶ 33*. Inmate Ritchey admitted he did not live in that cell and obeyed McCue's order to return to his own cell. *Id. ¶ 34-35*. A short time later, McCue escorted the plaintiff into a room, where he directed the plaintiff to read a disciplinary report McCue had just written, charging the plaintiff with abusing his position as a porter to allow an unauthorized inmate in his cell. *Id. ¶ 37-38*. McCue told the plaintiff he needed to learn "how not to rock the boat." *Id. ¶ 39*. The plaintiff protested, saying that he had always done his job. McCue responded that he was not talking about the job, but about the troubles in commissary. *Id. at 41-42*. McCue then asked the plaintiff if he was ready to return to the "unassigned" wing, which meant he was going to be fired and moved to a wing with more restricted privileges. *Plaintiff's Aff. ¶ 44-45*.

      19. On April 10, 2003, Defendant Jeffrey McCue issued Plaintiff a disciplinary report for insolence and abuse of privileges. The report charged Plaintiff with violating the rules by using his porter position to unlock his door and allow an inmate other than his cellmate to be in his cell to play chess. *Disciplinary Report dated April 10, 2003, attached to the Complaint in Appendix at p.2; Affidavit of Jeffrey McCue, attached hereto as Exhibit D*. None of the other inmates in the cell were written a report.

      20. On April 15, 2003, Plaintiff was found guilty of the charges in his April 10, 2003 disciplinary report based partly on the fact that Plaintiff admitted that the third inmate had entered Plaintiff's cell. *Adjustment Committee Final Summary Report dated April 15, 2003, attached to the Complaint in Appendix at p.3*.

21. The discipline imposed as a result of Plaintiff being found guilty of the charges in the April 10, 2003 disciplinary report included the loss of Plaintiff's job as a porter. *Adjustment Committee Final Summary Report dated April 15, 2003, attached to the Complaint in Appendix at p.3.*

22. The plaintiff filed a grievance on June 2, 2003, challenging the April 10 disciplinary report. The grievance officer recommended that the disciplinary report be expunged, for the stated reason that the second inmate involved in the incident was not mentioned in the report nor issued a disciplinary report. *Attachment to Complaint, p. 7 of 22 (scanned).* The Warden concurred and the report was expunged. The plaintiff did not receive his job back, however, for the stated reason that job assignments were administrative. *Id.*

23. On November 26, 2003, the ARB upheld the expungement and job loss on appeal, but by that time the plaintiff had already received a different job with equal pay. *Letter to the Plaintiff from Sherry Hile for the ARB, dated November 26, 2003, attached to Plaintiff's Complaint in Appendix at p.1.* Nancy Tucker signed Roger Walker's name to indicate concurrence. *Affidavit of Terri Anderson; Letter to Plaintiff from Sherry Hile for the ARB dated November 26, 2003, attached to Complaint in Appendix at p.1.*

24. At his deposition, Plaintiff testified that his only complaint with Director Walker is the fact that he or his designee signed off on Plaintiff's appealed grievances. *Plaintiff's Dep. at pp.25-26.*

## Analysis

"The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right." *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)(citations omitted)(denying qualified immunity for retaliation claim). "Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *see also Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)(assuming on motion to dismiss that prison grievances may be protected by speech or petition clauses of the First Amendment and right to access the courts). "Penalizing a prisoner's exercise of the constitutional right to petition for redress of grievances is a constitutional tort." *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006)(reversing merit review dismissal of inmate's claim that he suffered bogus conduct reports, discipline and segregation in retaliation for his letter and lawsuit complaining about staff abuse).

The defendants argue that a prisoner's grievance has to be about a matter of public concern and also state a claim for relief under federal law. The case cited by defendants,

*Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1992), does not support the argument. *Brookins* involved an inmate who was a co-chairman of a prison-approved group that provided legal assistance to other inmates. He was disciplined for writing a letter, on the group's official letterhead, because he failed to obtain the required prior approval from the group's coordinator. The *Brookins* Court determined that the rights at issue were the plaintiff's associational rights, and concluded that the plaintiff had failed to present evidence that the prison officials' response was exaggerated. 990 F.2d at 313. The Court also stated that the plaintiff's letter did not implicate free speech rights because the plaintiff had not demonstrated that his letter rose to the level of protected speech. *Id.*

*Brookins* rested primarily on the inmate's rights in his position as a co-chairman (in essence, an "employee"), which makes it more analogous to First Amendment cases involving retaliation against public employees for speaking out, where the bulk of the "public concern" cases arise. *See e.g. Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Button v. Kibby-Brown*, 146 F.3d 526 (7th Cir. 1998). *Brookins* can also be read as simply applying the rule that a prisoner's First Amendment rights are subject to legitimate penological interests. The prisoner in *Brookins* did not follow legitimate prison rules prohibiting him from using official letterhead without prior approval. *Brookins* did not involve or discuss a prisoner's right to file grievances.[1]

The defendants also cite *DeWalt v. Carter*, 224 F.3d 607, 614 (7th Cir. 2000), which contradicts their argument. In *Dewalt,* a prisoner alleged he was retaliated against after he filed grievance complaining about a correctional officer's racially derogatory and sexually suggestive comments. The Seventh Circuit held that the comments, by themselves, did not violate the Constitution. 224 F.3d at 613. However, the *retaliation for the grievance about those comments did state a Constitutional claim.* 224 F.2d at 619. So here: the plaintiff had no constitutional right to partake in commissary, but the defendants' *retaliation for his grievance* about it is actionable under the Constitution.

"To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

The plaintiff's affidavit allows a reasonable inference that defendants Fredrickson and McCue were motivated by the plaintiff's February and March grievances. According to the plaintiff, Frederickson repeatedly talked about the plaintiff's grievances, both to the plaintiff and to inmates within hearing range. Frederickson told other inmates that disciplinary reports would

---

[1] Though a prisoner may not be retaliated against for filing a grievance, he may be disciplined for abusing the grievance system, for example, for making false or insolent statements in a grievance. The line between the two can be murky.

have to be written against them for violating commissary rules, as a result of the plaintiff's grievance. Frederickson also told the plaintiff his grievances would get nowhere because "we're all family." McCue told the plaintiff he needed to learn how "not to rock the boat," right after giving him a disciplinary report which ultimately resulted in the loss of the plaintiff's job.[2]

The record also allows a reasonable inference that the March and April disciplinary tickets would not have been written if the plaintiff had not filed the grievances. As to Fredrickson's March ticket, the plaintiff avers that he stepped over the yellow line only because the name "Bell" was called, which is his name. This was verified by the adjustment committee and he was found not guilty. An inference arises that Fredrickson knew this before writing the ticket; he was there, after all, in charge of the line, and presumably knew the plaintiff's last name. As to McCue's April ticket, McCue does not explain why the other inmate, guilty of the same offense, received no disciplinary report. McCue's disciplinary report was expunged for that reason.

Of course, defendants have pointed out opposing and reasonable inferences in their favor. A jury may believe the defendants and not the plaintiff, but that only highlights the existence of disputed facts for the jury.

The case against Defendant Hawkinson is a harder question. The plaintiff asserts that Hawkinson should have investigated further, not just taken Fredrickson's word. That may be true, but an inference of retaliatory motive by Hawkinson does not arise because he should have looked further into the matter. On the other hand, Hawkinson apparently handled both the February grievance and March grievances, using the same perfunctory response for both. By the time Hawkinson dealt with the March grievance, the March disciplinary report had already been expunged. Further, there is no affidavit from Hawkinson, nor would it be appropriate for the court to determine Hawkinson's motivation or knowledge on the present record. Accordingly, Hawkinson remains in at this point.

Defendant Walker warrants a different result. Walker is too far removed from the alleged retaliation to allow an inference of personal responsibility. To hold Walker liable under § 1983, there must be evidence of that Walker was personally responsible for the retaliation–that he directed it, consented to it, approved it, or turned a blind eye. *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)(citations omitted); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)( "The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights.").

The Seventh Circuit held in *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), that the IDOC Director is not personally responsible where the Director has delegated responsibility for

---

[2]The court must accept these averments as true at this stage.

handling appeals to subordinates.[3] In any event, there is no evidence that Walker or his delegatee had reason to suspect retaliation, much less that they condoned it or turned a blind eye. By the time the matter reached the ARB, most of the issues had already been resolved in the plaintiff's favor. The disciplinary reports had already been expunged. True, the plaintiff was not restored to his original job, but he had already received another job with equal pay. As to the plaintiff's original February grievance, no retaliation had yet occurred, so the ARB's handling of that grievance could not have been part of the retaliation.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment (d/e 34) is granted in part and denied in part. The motion is granted as to Defendant Walker, who is dismissed. The motion is denied as to the remaining defendants Fredrickson, McCue and Hawkinson;

2) A final pretrial conference is scheduled for February 9, 2007 at 1:30 p.m. by video conference. The proposed final pretrial order is due February 2, 2007.

3) The proposed final pretrial order must include the names of all witnesses to be called at trial, including: (1) the name, prison number, and place of incarceration for each incarcerated witness; and (2) the locations from which IDOC employees who are not defendants will appear by video.

4) If a witness is not a plaintiff or defendant, not an employee of the IDOC, and/or not incarcerated, that witness must be subpoenaed in order to compel that witness' appearance at the trial (unless the witness voluntarily appears without a subpoena).

---

[3] *Johnson* did not address what appears to be the practice of the IDOC–the Director's delegatee signs the Director's name, not the delegatee's own name. The Director's name is also typed on the decision below the signature line–nowhere does the ARB decision indicate someone else is signing other than the Director, except for occasional cryptic and illegible initials. The court is troubled by this. No doubt the Director may delegate authority, but that delegation should be clear and transparent on the face of the ARB decision. The delegatee's name should be on the decision, so that the prisoner *pro se* plaintiff knows who is responsible for denying the grievance, without filing a lawsuit and conducting discovery. *See Goodman v. Carter*, 2001 WL 755137 (N.D. Ill.)(Warden "may delegate his duty to review inmate grievances. Nevertheless, he may not play a 'shell game,' delegating responsibility without disclosing to whom it is delegated, then denying personal responsibility when a prisoner seeks to hold him accountable. . . . he cannot expect to be taken off [the hook] without putting someone else on it."). Question for another day: whether the practice might warrant tolling of the statute of limitations for claims against the delegatee or might itself be actionable under the theory that it impairs an inmate's access to courts by concealing/misleading as to the proper defendant.

        If the plaintiff seeks to subpoena a witness, the plaintiff must file a motion for issuance of a subpoena at least 14 days before the final pretrial conference.  The motion must list the name and address of the witness and explain that witness' expected testimony.  The plaintiff must also include the witness fee of $40 for each witness to be subpoenaed, plus payment for mileage to and from the courthouse (currently 44.5 cents per mile for private vehicle, www.gsa.gov; 28 U.S.C. Section 1821(b) & (c)(2)).

5)       A jury trial is scheduled for March 7, 2007, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  IDOC inmates, other than the plaintiff, shall appear by video conference. IDOC employees, other than the defendants, may appear by video conference.

Entered this  3rd  day of  October,  2006.

                              **s\Harold A. Baker**

                              HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE